## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| IN RE: | ) Chapter 11 |
| | ) |
| BUFFETS HOLDINGS, INC., | ) Case No. 08-10141(MFW) |
| A Delaware Corporation, et al., | ) |
| | ) |
| Debtors. | ) |
| | ) Jointly Administered |
| | ) |
| OCB Restaurant Company, LLC, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adv. Pro. No. 08-51086(MFW) |
| | ) |
| John Vlahakis and Sandra | ) |
| Vlahakis, | ) |
| d/b/a Vlahakis Real Estate | ) |
| Development, | ) |
| | ) |
| Defendants. | ) |

### MEMORANDUM OPINION[1]

Before the Court is the motion by Defendants John Vlahakis and Sandra Vlahakis d/b/a Vlahakis Real Estate Development (the "Defendants") to transfer venue of this adversary proceeding to the United States District Court for the Western District of Michigan. OCB Restaurant Company, LLC (the "Plaintiff") opposes the motion. The Court will grant the motion for the reasons discussed below.

---

[1] The Court is not required to state findings of fact or conclusions of law pursuant to Rule 7052(a)(3) of the Federal Rules of Bankruptcy Procedure.

I.   <u>BACKGROUND</u>

On January 22, 2008, Buffets Holdings, Inc. and several of
its affiliates, including the Plaintiff, (collectively the
"Debtors") filed voluntary petitions for relief under chapter 11
of the Bankruptcy Code.

The instant adversary proceeding involves a dispute over a
Lease Agreement (the "Lease") executed by the Debtors and the
Defendants on April 12, 1992.  The Complaint was filed on July 9,
2008, seeking damages arising from the Defendants' alleged breach
of contract for failure to make certain repairs to the roof of
the property located at 2301 West Grand River Avenue, Okemos,
Michigan (the "Leased Premises").  The Complaint further seeks to
offset against unpaid rent certain amounts allegedly paid by the
Plaintiff for necessary repairs to the Leased Premises.  The
Defendants filed an answer with counter-claims, denying all
allegations and asserting that the Plaintiff breached the Lease.

On August 22, 2008, the Defendants filed the instant motion,
seeking to transfer venue of the proceeding to the United States
District Court for the Western District of Michigan.


II.  <u>JURISDICTION</u>

The Court has jurisdiction over this motion to transfer
venue, which is a core proceeding, pursuant to 28 U.S.C. §
157(b)(2)(A) (2006).  <u>See</u> <u>Brizzolara v. Fisher Pen Co.</u>, 158 B.R.

2

761, 767 (Bankr. N.D. Ill. 1993) ("Motions for change of venue,
abstention, and remand are core proceedings under 28 U.S.C. §
157(b)(2)(A)."). <u>See also</u> <u>Lipshie v. AM Cable TV Indus., Inc.</u>
<u>(In re Geauga Trenching Corp.)</u>, 110 B.R. 638, 653 (Bankr.
E.D.N.Y. 1990) (concluding that a motion to change venue does not
involve adjudication of a right that may be heard only by an
Article III Judge and, therefore, "a venue motion is a core
matter and that we have the authority to determine discretionary
transfer of venue motions despite the omission of the Bankruptcy
Court from § 1412.")

III. <u>DISCUSSION</u>

Pursuant to section 1412 of title 28,[2] a court is permitted
to transfer venue of a case or proceeding which is properly
before it "in the interest of justice or for the convenience of
the parties."  The moving party must demonstrate by a
preponderance of the evidence that transfer of venue is
warranted.  <u>See</u> <u>Jumara v. State Farm Ins. Co.</u>, 55 F.3d 873, 879
(3d Cir. 1995); <u>Hechinger Liquidation Trust v. Fox (In re</u>
<u>Hechinger Inv. Co. of Del.</u>), 296 B.R. 323, 325 (Bankr. D. Del.
2003).  Ultimately, the decision to grant or deny a motion to
transfer venue lies within the sound discretion of the Court.

---

[2]   Section 1412 provides that "[a] district court may
transfer a case or proceeding under title 11 to a district
court for another district, in the interest of justice or for
the convenience of the parties."  28 U.S.C. § 1412 (2006).

Hechinger, 296 B.R. at 325.  Courts within the Third Circuit have

enumerated several factors in evaluating motions to transfer

venue, including:

> (1) plaintiff's choice of forum, (2) defendant's forum
> preference, (3) whether the claim arose elsewhere, (4)
> location of books and records and/or the possibility of
> viewing the premises if applicable, (5) the convenience
> of the parties as indicated by their relative physical
> and financial condition, (6) the convenience of the
> witnesses – but only to the extent that the witnesses
> may actually be unavailable for trial in one of the
> fora, (7) the enforceability of the judgment, (8)
> practical considerations that would make the trial
> easy, expeditious, or inexpensive, (9) the relative
> administrative difficulty in the two fora resulting
> from congestion of the courts' dockets, (10) the public
> policies of the fora, (11) the familiarity of the judge
> with the applicable state law, and (12) the local
> interest in deciding local controversies at home.

Id. (citing Jumara, 55 F.3d at 879-80).

With respect to the first factor, the Plaintiff argues that

its choice of forum should be given significant weight because

this action was commenced in its home court.  The Defendants

argue that the Plaintiff's choice of forum should be given less

consideration where the Plaintiff's choice has no direct relation

to the operative, underlying facts of the proceeding.

While recognizing the significant weight given to a

plaintiff's choice of forum in any venue transfer decision, the

Court finds that weight is diminished where, as here, the

Plaintiff's choice of forum for its bankruptcy case has no direct

relation to the operative, underlying facts of the adversary

proceeding.  See, e.g., Centennial Coal, Inc. v. Coal Equity,

4

Inc., 282 B.R. 140, 144-45 (Bankr. D. Del. 2002).  The Plaintiff
claims that the adversary proceeding was brought in its home
court of Delaware.  Yet, the Plaintiff is a limited liability
company organized under the laws of the state of Minnesota and
conducts business in the state of Michigan.  This adversary
proceeding is a breach of contract action, which will have little
if any impact on the administration of the Debtors' bankruptcy
case and/or the estate.  Id. at 145 (granting motion to transfer
venue because, inter alia, Plaintiff's attempt to liquidate
account receivable would have little impact upon bankruptcy case
or estate).

    The Plaintiff argues that the Defendants' choice of forum,
the second factor, should be given little weight.  The Court
agrees that typically a defendant's preference does not carry as
much weight as a plaintiff's choice of forum.  There is an
exception, however, where, as here, the other Jumara factors
weigh substantially in favor of transferring venue.  See Jumara,
55 F.3d at 880; Centennial Coal, 282 B.R. at 148 (finding other
factors overcome presumption in favor of plaintiff's choice of
forum).

    As to the third factor, the events relevant to the
Plaintiff's claim arose entirely in Michigan.  The Defendants
note that the Lease was written, signed, performed, and allegedly
defaulted in Michigan.  The Court agrees that none of the events
relevant to the claim or its defense arose in the District of

Delaware.  See Jumara, 55 F.3d at 882 (transferring venue after

finding that "[e]verything related to this action occurred in

Luzerne county, which lies in the Middle District: plaintiff

resides there, the contract was signed there, the underlying

accident occurred there, and the requested arbitration will

eventually occur there.")

The fourth factor (the location of books and records) also

weighs in favor of transferring this proceeding.  The Plaintiff

argues that the claim involves relatively few issues in dispute

and document production would not be extensive.  The Court is not

convinced.  Instead, the Court agrees with the Defendants'

argument that because substantially all of the books, records,

documents, and exhibits relevant to the matter in controversy are

located in Michigan, the adversary proceeding should be

transferred there.  See Jumara, 55 F.3d at 879; Centennial Coal,

282 B.R. at 146, n.11.  Furthermore, the Court notes that a fact-

finder or a witness may be required to visit the Leased Premises,

adding another reason why the adversary proceeding should be

heard in Michigan.  See Centennial Coal, 282 B.R. at 147.

On the fifth factor, the Defendants argue that it will be

more convenient for the parties to litigate in Michigan because

it is the location of virtually all of the evidence, the

witnesses, and both litigants' place of business.  In response,

the Plaintiff argues that transferring venue of this proceeding

to another forum may actually increase the administrative

expenses of the estate.

The Court rejects the Plaintiff's argument.  In light of the parties' proximity to the witnesses and documents in Michigan, the Court finds that it would be significantly more burdensome and expensive for the Plaintiff (as well as the Defendants) to litigate in Delaware.  <u>See</u> <u>Jumara</u>, 55 F.3d at 882 (discussing the impact of this factor on forum selection clause); <u>Centennial Coal</u>, 282 B.R. at 148.  Furthermore, the Court agrees with the Defendants' assertion that they had little or no expectation that litigation on the Lease would be commenced in Delaware. <u>Centennial Coal</u>, 282 B.R. at 148 (recognizing that defendants had little or no expectation that litigation arising out of transactions conducted entirely in Kentucky would be litigated in Delaware).

With respect to the sixth factor, the Defendants argue that substantially all of the material witnesses, including non-party witnesses and the Plaintiff's agents and employees, are located in the state of Michigan.  In response, the Plaintiff argues that the Defendants failed to demonstrate that any witnesses are actually unavailable for trial in Delaware.

With respect to the non-party witnesses, the Court finds that they are outside the Court's subpoena power.  <u>See</u> Fed. R. Bankr. P. 9016 (incorporating Federal Rule of Civil Procedure 45(b)(2), which limits the court's subpoena power to a 100-mile radius from the courthouse).  In addition, given that this

7

proceeding relates to the physical condition of the roof of the
Leased Premises, an examination of the Leased Premises may be
necessary.  See Centennial Coal, 282 B.R. at 147.  To the extent
expert witnesses are needed, it will be more convenient for the
parties and their witnesses if the proceeding is transferred to
Michigan where the leased Premises are located.  Id. at 147-48.

     The seventh factor (the enforceability of the judgment) does
not weigh in favor of either party.  The Court has no reason to
believe that a judgment rendered in either jurisdiction would not
be given full faith and credit.  See Jumara, 55 F.3d at 882;
Hechinger, 296 B.R. at 326.

     As to the eighth factor (practical considerations that would
make the trial easy, expeditious or inexpensive), the Plaintiff
claims that the Court's familiarity with the Debtors' business
would allow for a more efficient resolution of the matter here.
The Defendants argue that a federal judge in Michigan is
intimately more familiar with the Michigan state law which would
allow for a more expeditious resolution of the matter.

     The Court concludes that any knowledge it has of the
Debtors' bankruptcy case would be of little assistance in
deciding this adversary proceeding involving a breach of contract
under Michigan state law.  See  Centennial Coal, 282 B.R. at 145.
Therefore, practical considerations will be better served by
transferring venue of the proceeding.

On the ninth factor (the relative administrative difficulty
in the two fora resulting from congestion of the courts'
dockets), the Plaintiff argues that removal of a single adversary
proceeding will not substantially alleviate this Court's heavy
caseload.  See Oglebay Norton Co. v. Port (In re ONCO Inv. Co.),
320 B.R. 577, 581 (Bankr. D. Del. 2005).  However, the attenuated
relationship between the Debtors' bankruptcy case and this
adversary proceeding support transfer of this proceeding to
reduce, however minimally, the burden upon the Court.  See
Centennial Coal, 282 B.R. at 148 (acknowledging burden on the
Court's docket).

With respect to the tenth factor (the public policies of the
fora), the Defendants argue that a Michigan court has a greater
interest in resolution of a matter that may affect Michigan
residents, businesses, and development of Michigan law.  In
response, the Plaintiff argues that transfer of the proceeding to
Michigan would dramatically increase the administrative expenses
of the estate, thereby lowering the amounts available for
distribution to the creditors.

The Court finds that a Michigan court indeed has a strong
interest in resolution of the matter due to the potential impact
upon Michigan residents and businesses, as well as the
development of Michigan law.  In contrast, the instant litigation
constitutes nothing more than a contract dispute which would not
significantly impact the Debtors' estate.  In fact, since all of

9

the witnesses, records, and books are in Michigan, transferring venue of this proceeding will likely reduce administrative expenses of the estate.

As to the eleventh factor (the familiarity of the judge with the applicable state law), the Plaintiff contends that the legal issues presented are neither complex nor novel; thus, there is no reason that this Court would be unable to apply Michigan law. Although the Court is capable of applying Michigan law to the issues presented, the Court agrees with the Defendants' position that a judge sitting in Michigan is more familiar with Michigan state law. Id. (finding that "although Plaintiff claims that none of the issues involved are novel or complex, I think it would be more appropriate for a local judge to decide the matter").

With respect to the twelfth factor (the local interest in deciding local controversies at home), the Court agrees with the Defendants' argument that a court in Michigan has a greater interest in deciding issues which may affect Michigan residents and the development of Michigan law. See Jumara, 55 F.3d at 882; Centennial Coal, 282 B.R. at 148 (recognizing that Kentucky court had a "greater interest in deciding issues which may affect Kentucky residents and/or the development of Kentucky common law").

After weighing the above factors, the Court concludes that the Defendants have met their burden of establishing that

transfer of this adversary proceeding to the United States District Court for the Western District of Michigan is warranted for the convenience of the parties and in the interest of justice.

IV.  <u>CONCLUSION</u>

For the reasons set forth above, the Court will grant the Defendants' motion to transfer this adversary proceeding to the United States District Court for the Western District of Michigan.

Dated: December 8, 2008              BY THE COURT:

Mary F. Walrath
United States Bankruptcy Judge